## William H. Horn
### v.
### O. T. Booth et al., for use, etc.

*Garnishment—Assignment of Indebtedness—Rights of Assignee, Pro-tected—Evidence—Date of Instrument as* Prima Facie *Evidence.*

1.  In garnishee proceedings courts of law will notice and protect the interests of equitable owners of choses in action.

2.  Where the indebtedness sought to be reached by garnishee process has been assigned in good faith for a valuable consideration prior to the service thereof, the rights of the assignee will be protected.

3.  In the case presented in the absence of evidence to impeach the consideration of good faith of the transaction, the assignment is held to be a valid transfer of the indebtedness sufficient to vest an equitable title thereto in the assignees. It is also *held:* That the evidence shows the assignment to have been prior in time to the service of the attachment writs; that the declarations of the assignors concerning the assignment are competent evidence against the attaching creditors; and that the burden of showing that the assignment was subsequent to the service of the attachment writs, was on the attachment creditors.

4.  The date of an instrument is only *prima facie* evidence of the time of its execution.

[Opinion filed February 2, 1887.]

Appeal from the Superior Court of Cook County; the Hon. Elliott Anthony, Judge, presiding.

Mr. Wm. T. Blair, for appellant.

Mr. Henry Magee, for appellees.

Bailey, J. On the 12th day of October, 1885, two attachment suits were brought in the Superior Court against O. T. Booth and another, composing the firm of O. T. Booth & Co., non-resident debtors, one by Jacob Johnson and the other by Sievert T. Gunderson and another, and in both suits William H. Horn was summoned as garnishee. Judgments having been recovered in both suits against the principal debtors, viz., in the

Johnson case for $455 and costs, and in the Gunderson case for $205 and costs; and the garnishee having answered, the attachment creditors traversed his answer in the mode prescribed by the statute, and both suits coming on to be heard together on the issues thus formed, before the court without a jury, the court found said issues in favor of said creditors, and found that at the time of the service of the writ of garnishment said garnishee was indebted to Booth & Co. in the sum of $483, and judgment for that sum was thereupon rendered against said garnishee in favor of said Booth & Co. for the use of said creditors, and said money was ordered to be distributed to said creditors in proportion to the amount of their respective judgments. From this judgment the garnishee has appealed to this court.

The indebtedness, upon which said judgment against the garnishee was rendered, was for a cargo of wood shipped by Booth & Co., from Charlevoix, Michigan, to the garnishee at Chicago, a short time prior to the commencement of the attachment suits. The question is whether said indebtedness had been assigned by Booth & Co., to the firm of Curtis, Watchel & Co., of Petosky, Michigan, prior to the service of the attachment writ on the garnishee.

The answer of the garnishee, which was the same in both cases, denied the possession by the garnishee of any lands, tenements, goods, chattels, moneys, rights, credits, property or effects belonging to said Booth & Co., and also denied that the garnishee, at the date of the service of the writ, was indebted to said Booth & Co. in any sum. A negative answer was given to all the interrogatories except the following :

"Did you not receive and sell for O. T. Booth & Co. a cargo of wood, and how much did you receive for the same, and what was the balance in your hands due O. T. Booth & Co.?" To this interrogative the following answer was given : "That on October 11, 1885, he received notice from O. T. Booth & Co. that they had shipped to him a cargo of wood, 161 cords, 4 ft., at $3 per cord, amounting to $483, on the schooner Cuyahoga, for which her captain had refused to pay; that they had transferred their interest in the cargo to other

parties who would draw for the same, to which he answered that he would pay the drafts, and on the following day a bill of said wood, assigned to Curtis, Watchel & Co., of Petosky, Michigan, and a draft for $483 was sent by said Curtis, Watchel & Co. to said W. H. Horn for payment, but which he refused to pay, having been served with the writ in this case before the draft was presented, but after he had agreed as aforesaid to pay the same."

The evidence shows that a few days prior to the service of the attachment writ, Johnson, the plaintiff in one of the attachment suits, sent the schooner Cuyahoga, of which he was the owner, to the port on Lake Michigan from which Booth & Co. were shipping wood, for a cargo of wood to be delivered to him under contract which he then had with Booth & Co.; that on the arrival of the vessel at said port, Booth & Co. refused to deliver said wood, which fact was communicated to Johnson by the master of said vessel by telegraph; that after the vessel had endeavored to obtain a cargo elsewhere, and failed, Johnson called on Horn, the garnishee, in Chicago, and asked him to allow the vessel to be sent to Booth & Co. for a cargo of wood on his account. Horn informed Johnson that by the terms of his contract with Booth & Co. the wood was to be paid for on delivery, and that in order to obtain the cargo on his account it would be necessary to pay for it, as Booth & Co. would not let it go on any other terms. Johnson replied that his captain had the money and he would instruct him to pay for it. On this arrangement Horn consented to have the vessel take a cargo from Booth & Co. for him, and requested Booth & Co. by telegraph to load the Cuyahoga on his account, and that the captain would pay him for it. Upon this order Booth & Co. delivered to said captain a cargo of wood which was placed on board the vessel, but the captain, after getting the cargo into his possession, sailed away without paying for it. On the morning of October 12, 1885, Horn received a telegram from Booth, dated October 11th, as follows:

"Cuyahoga loaded and gone; captain refused to pay; have transferred our interest in cargo to other parties who will draw for same.  Will write.  Answer."

A letter of the same date written by Booth & Co. to Horn, and received a day or two later, repeated substantially the same statements contained in the telegram, and, at about half past 10 o'clock in the forenoon of October 12th, Horn telegraphed Booth & Co., as follows: "Message received. Will pay draft. Wire when other vessels get loaded." After this telegram was sent, and at a little after noon of the same day, the attachment writs were served on Horn. A day or two later a draft for $483, the price of the cargo of wood, dated October 12, 1885, drawn on Horn by Curtis, Watchel & Co., payable to their own order and by them duly indorsed, was presented to said Horn for payment by a messenger of a Chicago bank, said draft being accompanied by an assignment of the account for said cargo dated October 12, 1885, executed by O. T. Booth & Co. to said Curtis, Watchel & Co., but in consequence of the previous service on him of the attachment writ Horn refused to honor the draft, and the same was protested.

In garnishee proceedings courts of law will notice and protect the interests of equitable owners of choses in action. Hodson v. McConnell, 12 Ill. 170; Carr v. Waugh, 28 Ill. 418; Dehner v. Helmbacher F. & R. M., 7 Ill. App. 47; Sheldon v. Hinton, 6 Ill. App. 216. If, then, the indebtedness sought to be reached in this case by process of garnishment was assigned by Booth & Co. to Curtis, Watchel & Co. in good faith and for a valuable consideration prior to the service of the attachment writ on Horn, it was not subject to garnishment at the suit of Booth & Co.'s creditors. The assignment which was offered in evidence recites a consideration and was properly executed, and purports to assign, transfer and set over said indebtedness to said Curtis, Watchel & Co. No evidence was offered impeaching the consideration or good faith of the transaction. It must then be held, under the rule laid down in Sheldon v. Hinton, *supra,* and the authorities there cited, to be a valid assignment of said indebtedness, sufficient to vest an equitable title thereto in the assignees.

The more difficult question in the case is, whether, under

Horn v. Booth et al.

the pleadings and evidence, the service of the attachment writs or the execution of the assignment should be deemed to be prior in point of time. The assignment bears date October 12th, and the attachment writs were served that day at or shortly after noon. But we think the evidence tends to show that the assignment was executed first. The evidence on that point consists of the declarations of Booth & Co. in their telegram and letter of October 11th. Those declarations were made before the service of the writs, and before the attachment creditors had acquired any lien. Such declarations are evidence against Booth & Co., the real plaintiffs in the garnishee suits, and they are also competent as against the attachment creditors who are seeking to enforce a subsequently acquired lien on Booth & Co.'s interest in the indebtedness from Horn.

Booth & Co.'s declarations in both their telegram and letter were to the effect that they had then assigned said indebtedness to parties who would draw on Horn for the amount due. The assignees were not named, it is true, but said declarations being followed by a draft drawn the next day by Curtis, Watchel & Co. with Booth & Co.'s assignment of the claim attached, leaves no doubt as to the identity of the assignees referred to, in the absence of evidence of any attempts by Booth & Co. to transfer the claim to any other assignees.

But it is argued that the assignment to Curtis, Watchel & Co. being dated October 12th, must be deemed to be another and different assignment from the one referred to in Booth & Co.'s telegram and letter. Such conclusion does not necessarily follow. The date of an instrument is only *prima facie* evidence of the time of its execution, and it may be shown by evidence *aliunde* that such instrument was in fact executed and delivered on another day either before or after the day of its date. It being assumed that Curtis, Watchel & Co. were the assignees referred to by Booth & Co. in their telegram and letter, as we think, under the evidence, it must be, the declarations of Booth & Co. tend very strongly to show that the assignment, though dated October 12th, was in fact executed the day previous.

But there is another view to be taken of the case which leads to the same conclusion. The answer of the garnishee denies all indebtedness to Booth & Co. The answer to the specific interrogatory in relation to the cargo of wood, though inartificially drawn, was manifestly intended as an admission of the purchase of the cargo of wood from. Booth & Co., thereby charging himself as garnishee, coupled with an averment of an assignment of the account by Booth & Co. prior to the service of the writ, thereby discharging himself. If the creditors had deemed the answer insufficient, they might have demurred to it, and thus obtained a further answer. Meadowcroft v. Agnew, 89 Ill. 469. They did not see fit to do that, but by taking issue admitted its insufficiency to discharge the garnishee. They thereby took upon themselves the burden of disproving the facts which constituted such discharge. The sworn answer of a garnishee must be taken as true until overcome by evidence. Laschear v. White, 88 Ill. 43; I. C. R. R. Co. v. Cobb, 48 Ill. 402; Truitt v. Griffin, 61 Ill. 26. The burden of proof being on the creditors, it was for them to show that the assignment was subsequent to the service of the attachment writs. No such proof being made, it will be assumed, as against them, that the contrary is the fact.

We are of the opinion, then, that the finding of the court is unsupported by the evidence, and for that reason the judgment will be reversed and the cause remanded.

<em>Judgment reversed.</em>